UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RIGOBERTO ANTONIO CHAVEZ-
GONSALEZ,

        Petitioner,

    v.

MICHAEL BALL, *in his official capacity as Acting Deputy Field Office Director, Buffalo Federal Detention Facility*[1],

        Respondent.
_____

**DECISION AND ORDER**

6:23-CV-06238 EAW

## INTRODUCTION

Represented by counsel, petitioner Rigoberto Antonio Chavez-Gonsalez ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 9). In particular, Petitioner claims that his continued detention "without an adequate process for review violates his right to procedural due process." (*Id*. at ¶ 60). For the reasons that follow, the Court denies the amended petition, which is the operative pleading.

---

[1]    Michael Ball has replaced Jeffrey Searls as the officer in charge of the Buffalo Federal Detention Facility, and has been automatically substituted as the respondent pursuant to Federal Rule of Civil Procedure 25(d). The Clerk of Court is direct to amend the caption of this action accordingly.

**BACKGROUND**

I.  **Factual Background**

Petitioner is a citizen and national of El Salvador. (Dkt. 12-2 at ¶ 5). He has a long history of illegal entry into and removal from the United States.

On or about December 14, 2004, Petitioner unlawfully entered the United States without inspection, admission, or parole. (*Id*. at ¶ 6). Shortly thereafter, Petitioner was detained by agents of the Department of Homeland Security ("DHS") near the Mariposa Port of Entry in Arizona and taken into immigration custody. (*Id.* at ¶ 7). Petitioner was charged as inadmissible to the United States pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), and ordered removed by an immigration judge ("IJ"). (*Id*. at ¶¶ 8-9). Petitioner was removed from the United States to El Salvador on January 24, 2005. (*Id*. at ¶ 10).

On or about October 27, 2009, Immigrations and Customs Enforcement ("ICE") encountered Petitioner near Douglas, Arizona. (*Id*. at ¶ 11). Petitioner was taken into immigration custody and notified that his 2005 removal order would be reinstated for purposes of effectuating his removal. (*Id*. at ¶¶ 11-12). On November 11, 2009, Petitioner was removed from the United States to El Salvador. (*Id*. at ¶ 13).

On or about March 14, 2012, ICE encountered Petitioner at Nassau County Correctional Center in New York. (*Id*. at ¶ 15). Petitioner was notified that that his 2005 removal order would be reinstated for purposes of effectuating his removal. (*Id*.). Petitioner was subsequently convicted of possession of a forged instrument in state court

and released into ICE custody. (*Id*. at ¶¶ 16-17). On June 15, 2012, Petitioner was removed from the United States to El Salvador. (*Id*. at ¶ 18).

Just over a month later, on July 21, 2012, DHS encountered Petitioner near Hidalgo, Texas, and took him into custody. (*Id*. at ¶ 19). The next day, a criminal complaint was filed in the United States District Court for the Southern District of Texas, charging Petitioner with a violation of 8 U.S.C. § 1325(a)(1). (*Id*. at ¶ 20). Petitioner was further notified that that his 2005 removal order would be reinstated for purposes of effectuating his removal. (*Id*.). Petitioner was subsequently convicted of improper entry to the United States in violation of 8 U.S.C. § 1325(a)(1), and was removed from the United States to El Salvador on September 20, 2012. (*Id*. at ¶¶ 22-23).

On February 18, 2020, Petitioner was arrested in Nassau County on charges of sexual abuse in the first degree and endangering the welfare of a child. (*Id*. at ¶ 24). On February 26, 2020, a criminal complaint was filed in the United States District Court for the Eastern District of New York charging Petitioner with a violation of 8 U.S.C. § 1326(a)(2). (*Id*. at ¶ 26). ICE arrested Petitioner on June 11, 2021, and turned him over to the United States Marshals Service ("USMS") in connection with his pending federal criminal prosecution. (*Id*. at ¶ 27).

On June 30, 2021, Petitioner was convicted of disorderly conduct in state court. (*Id*. at ¶ 28). On May 2, 2022, Petitioner pled guilty to a violation of 8 U.S.C. § 1326(a)(2) in the United States District Court for the Eastern District of New York. (*Id*. at ¶ 29).

On May 4, 2022, Petitioner was released from USMS custody into ICE custody. (*Id*. at ¶ 30). That same day, Petitioner was notified that that his 2005 removal order would

be reinstated for purposes of effectuating his removal. (*Id*.). Petitioner asserted a fear of returning to El Salvador. (*Id*.). Accordingly, on May 24, 2022, an asylum officer with U.S. Citizenship and Immigration Services ("USCIS") conducted a reasonable fear interview with Petitioner pursuant to 8 C.F.R. § 1208.31. (*Id*. at ¶ 31). USCIS determined that Petitioner had a reasonable fear of persecution or torture if removed to El Salvador, and initiated withholding-only proceedings. (*Id*. at ¶¶ 31-32).

Petitioner was transferred to the BDFD on July 26, 2022, and has remained detained throughout his withholding-only proceedings. (*Id*. at ¶ 33). On July 30, 2023, ICE provided Petitioner with a custody redetermination hearing pursuant to *Fraihat v. ICE*, 445 F. Supp. 3d 709 (C.D. Cal. April 20, 2020), *vacated by Fraihat v. ICE*, No. 5:19-CV-01546 JGB SHK, 2022 WL 20212706, at *1 (C.D. Cal. Sept. 16, 2022).[2] ICE determined that Petitioner would remain detained because he posed a threat to public safety and was a flight risk. (Dkt. 12-2 at ¶ 34).

On August 10, 2022, January 31, 2023, and April 20, 2023, and May 5, 2023, ICE conducted post-order custody reviews and determined, after considering the factors set forth at 8 C.F.R. § 241.4(e), (f), and (g), that Petitioner would continue to be detained. (*Id*. at ¶¶ 35-36, 39-40).

---

[2] In *Fraihat*, the district court—among other things—ordered that all ICE detainees with particular risk factors for COVID-19 be given custody hearings. 445 F. Supp. 3d at 751. The Ninth Circuit ultimately reversed and directed that the order be vacated. *See Fraihat v. ICE*, 16 F.4th 613, 651 (9th Cir. 2021).

On March 20, 2023, an IJ denied Petitioner's applications for relief from removal. (*Id*. at ¶ 37). Petitioner appealed that determination to the Board of Immigration Appeals (the "BIA"). (*Id*. at ¶ 38). On July 31, 2023, the BIA affirmed the IJ's decision and dismissed Petitioner's appeal. (Dkt. 15-1 at ¶ 5). Petitioner has filed a Petition for Review, which remains pending before the Court of Appeals for the Second Circuit. (*See* Dkt. 18).

## II.     **Procedural Background**

Petitioner, who at the time was proceeding *pro se*, commenced this action on May 3, 2023. (Dkt. 1). Following the appearance of counsel on Petitioner's behalf (Dkt. 6), the parties agreed to the filing of an amended petition. (Dkt. 7; Dkt. 8). The amended petition was filed on July 7, 2023, and is the operative pleading. (Dkt. 9). The amended petition contains a single claim for relief—that "[c]ontinuing to detain [Petitioner] pursuant to 8 U.S.C. § 1231 without an adequate process for review violates his right to procedural due process." (*Id*. at ¶ 60). Petitioner asks the Court to issue "a conditional writ of habeas corpus requiring Respondent[] to provide Petitioner with a constitutionally adequate, individualized hearing before an impartial adjudicator at which Respondent[] bear[s] the burden of establishing by clear and convincing evidence that the Petitioner is a danger to the community or a flight risk that no alternatives to detention could reasonably secure his future compliance with the orders of immigration officials[.]" (*Id*. at 18).

Respondent filed a response to the amended petition, and Petitioner filed a reply. (Dkt. 12; Dkt. 14). Respondent thereafter filed a notice advising the Court of further developments in Petitioner's immigration proceedings (Dkt. 15), and Petitioner filed a response to Respondent's notice (Dkt. 18). In that response, Petitioner indicated that he

would be making "a formal request to file supplemental legal argument" in response to the notice. (Dkt. 18 at 2). However, no such formal request was ever filed.

## DISCUSSION

### I. Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider."). "Respondent does not dispute that this Court has subject-matter jurisdiction over Petitioner's challenge to his continued detention." (Dkt. 12 at ¶ 1).

### II. Legal framework

As discussed above, Petitioner is subject to a reinstated order of removal and is in withholding-only proceedings. As such, he is detained pursuant to 8 U.S.C. § 1231, which governs detention of individuals subject to a final order of removal. *Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021).

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682. The removal period begins on the latest of: (1) the date the removal order becomes administratively final; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) the date the alien is released from detention or confinement, unless such detention or confinement is the result of an immigration process. 8 U.S.C. § 1231(a)(1)(B).

After expiration of the 90-day removal period, 8 U.S.C. § 1231(a)(6) allows the government to continue to detain certain classes of aliens or to release them, subject to appropriate terms of supervision. *Id*. In *Zadvydas*, the Supreme Court read "an implicit limitation into" § 1231(a)(6), holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. The *Zadvydas* Court further adopted a 6-month "presumptively reasonable period of detention," and instructed that "[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701; *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) ("The [*Zadvydas*] Court stated that detention is presumptively reasonable for six months following a final removal order, and that, after the first six

- 7 -

months, detention violates § 241 if (1) an alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing.").

In recent years, there has been additional litigation regarding what the Due Process Clause requires in the post-removal-order detention context. "In 2018, the Third Circuit noted the serious due process issues posed by § 1231(a)(6), but, guided by the canon of constitutional avoidance, ultimately construed the statute as implicitly entitling a noncitizen detainee to a bond hearing after six months pending the resolution of withholding-only proceedings." *Cabrera Galdamez v. Mayorkas*, No. 22 CIV. 9847 (LGS), 2023 WL 1777310, at *3 (S.D.N.Y. Feb. 6, 2023) (citing *Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208, 223-24 (3d Cir. 2018)). The Ninth Circuit had reached a similar conclusion in a 2011 case. *See Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011). However, in *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022), the Supreme Court overruled *Guerrero-Sanchez* and held that "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence that a detained noncitizen poses a flight risk or a danger to the community." *Id.* at 581. *Arteaga-Martinez* did not reach the issue of whether the Due Process Clause might require bond hearings for individuals detained under § 1231(a)(6) on an as-applied basis, leaving that question "for the lower courts to consider in the first instance." *Id.* at 583.

Lower federal courts, in this Circuit and others, have considered as-applied procedural due process challenges to prolonged detention under § 1231(a)(6) post-*Arteaga-Martinez*, and have reached disparate conclusions about the appropriate methodology for deciding such challenges. *See, e.g., Juarez v. Choate*, No. 1:24-CV-00419-CNS, 2024 WL 1012912, at *6 (D. Colo. Mar. 8, 2024) ("There remains . . . some ambiguity about the proper framework to analyze Fifth Amendment due process challenges for individuals . . . who are being detained under § 1231(a)(6)."); *Michelin v. Oddo*, No. 3:23-CV-22, 2023 WL 5044929, at *6 (W.D. Pa. Aug. 8, 2023) ("[S]ince the Supreme Court decided *Arteaga-Martinez* . . ., there is ambiguity about the proper framework to analyze as-applied due process challenges for individuals . . . who are being detained under § 1231(a)(6).").

Petitioner urges the Court to apply the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to his as-applied due process challenge. (Dkt. 9 at 47). Respondent does not directly address this argument, but contends that "there is no serious doubt that § 1231(a)(6), as implemented by existing regulations, complies with the Due Process Clause of the Fifth Amendment." (Dkt. 12-1 at 19). Respondent further argues that "[t]he post-removal-order custody review process, implemented after *Zadvydas* and applied to [Petitioner], satisfies the requirements of 8 U.S.C. § 1231(a)(6) and the Due Process Clause." (*Id*. at 25).

In the absence of any argument to the contrary by Respondent, the Court will apply *Mathews* in deciding Petitioner's due process claim. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (applying *Mathews* in evaluating whether the petitioner's

"ongoing incarceration posed due process concerns at the time of his habeas filing and whether additional procedural protections then became necessary").[3]

### III. Petitioner has not Demonstrated a Procedural Due Process Violation

The three factors identified in *Mathews* are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

"Here, the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851. At the time he filed the amended petition, Petitioner had been detained for 15 months, and not on the basis of his criminal convictions. The BFDF, "while perhaps not akin to a maximum-security prison," is not, for many individuals, "meaningfully different from at least a low-security penal institution for criminal detention." *Wilson v. Barr*, No. 1:19-CV-01364 EAW, 2020 WL 13554798, at *7 (W.D.N.Y. May 1, 2020).

---

[3] The petitioner in *Velasco Lopez* was detained pursuant to "8 U.S.C. § 1226(a), which provides for discretionary detention of noncitizens during the pendency of removal proceedings." 978 F.3d at 845. "While *Velasco Lopez* was decided in the context of § 1226(a), the Second Circuit's reasoning is applicable here." *Cabrera Galdamez*, 2023 WL 1777310, at *5 (S.D.N.Y. Feb. 6, 2023) (applying *Mathews* test to prolonged detention under § 1231(a)(6)).

Respondent argues at length that Petitioner's liberty interest is less significant than the liberty interest at issue in *Zadvydas*, because his detention is not "indefinite and potentially permanent." (Dkt. 12-1 at 20-25).[4] However, *Zadvydas* does not stand for the proposition that <u>only</u> indefinite and potentially permanent detention can trigger due process concerns. And the Second Circuit in *Velasco Lopez* found a procedural due process violation where detention was simply "prolonged," explaining that "[t]he longer the duration of incarceration, the greater the deprivation." 978 F.3d at 852.[5] Petitioner need not establish that his detention is indefinite and potentially permanent to establish a strong interest in his liberty. Accordingly, the first *Mathews* factor weighs in his favor.

Turning to the second *Mathews* factor, "[p]rocedural due process rules are shaped by the risk of error inherent in the truth-finding process." *Id*. "At this stage in the *Mathews* calculus, the primary interest is not that of the Government but the interest of the detained

---

[4] Throughout his opposition papers, Respondent suggests that Petitioner cannot prevail on his as-applied procedural due process claim unless he can satisfy the standard identified in *Zadvydas*—namely, if he "provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future[.]" (Dkt. 21-1 at 24). This argument misapprehends both the holding in *Zadvydas* and the nature of Petitioner's claim. *Zadvydas* was a statutory interpretation decision. *See Clark v. Martinez*, 543 U.S. 371, 371 (2005) ("In *Zadvydas* . . ., this Court interpreted § 1231(a)(6) to authorize the detention of aliens who have been admitted to the country only as long as 'reasonably necessary' to effectuate their removal."). *Zadvydas* did not determine the requirements of procedural due process in the context presented here. Further, Petitioner is not claiming that he is entitled to a bond hearing (or release from custody) pursuant to *Zadvydas*.

[5] Respondent also seems to argue that Petitioner's detention cannot be considered prolonged because it is his "own litigation strategy before the immigration court and the BIA" that has caused the immigration proceedings to persist. (Dkt. 12-1 at 25). The Court does not find this argument persuasive, inasmuch as Respondent has provided no description of the purportedly dilatory "litigation strategy" employed by Petitioner.

individual." *Id*. The Court thus must ask whether "the procedures underpinning [Petitioner's] lengthy incarceration markedly increased the risk of error." *Id*.

Here, Plaintiff has had two types of custody hearing or review. First, he was provided a custody redetermination hearing pursuant to *Fraihat*. Second, he was provided with multiple post-order custody reviews ("POCRs") pursuant to 8 C.F.R. § 241.4.[6] In reviewing Petitioner's custody status, ICE determined that Petitioner posed a danger to the community and a significant risk of flight, based on his prior criminal convictions, his multiple prior unlawful entries into the United States, and his failure to provide "any information regarding family in the United States, equities in the community, non-governmental sponsors or employment prospects." (Dkt. 12-2 at 93-96, 98-101, 127-32).

In *Velasco Lopez*, the Second Circuit made clear that a court's analysis of the second *Mathews* factor is highly fact specific. The *Velasco Lopez* court found relevant in that particular case the fact that "[a]fter fifteen months, the Government had not found information sufficient to show that Velasco Lopez was a poor bail risk, and indeed, it was in possession of important information indicating the contrary[.]" 978 F.3d at 852-53 (explaining that ICE had refused to produce the petitioner for criminal court appearances related to pending state charges and that "[w]hen ICE finally did produce him, the charges

---

[6] During POCRs, it is the detainee's burden to "demonstrate[] . . . that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending [his or her] removal from the United States." 8 C.F.R. § 241.4(d)(1). The adjudicator considers a number of factors, and the detainee has the right to submit evidence, to use the services of an attorney or another representative, and to seek a government-provided translator where appropriate. *Id*. § 241.4(f)(5), (7), (8)(iii), (h)(2), (i)(3).

were dismissed"); *see also Cabrera Galdamez*, 2023 WL 1777310, at *2 (finding second *Mathews* factor favored the petitioner because he had "provided sufficient evidence that the Government might find difficult to overcome if it had to demonstrate affirmatively that Petitioner poses a risk of flight or danger to the community necessitating his continued detention"—including evidence that he had a "thorough release plan" and the means to carry it out, a mother and young daughter in New York City, a plan to "seek mental health services to address his diagnosed PTSD," and a "food handling certificate, which [would] help him in his search for employment outside of detention").

In this case, Petitioner has not pointed to any specific facts showing that the procedures employed in reviewing his custody status markedly increased the risk of error. Petitioner has not discussed at all the fact that he was provided a custody redetermination hearing pursuant to *Fraihat*, nor offered any argument as to why the procedures associated with that hearing were insufficient to satisfy his right to procedural due process. Nor has Petitioner argued that the evidence in ICE's possession—namely, that Petitioner had unlawfully entered the United States on at least five occasions, had previously been removed from the United States on four different occasions, had two prior criminal convictions for illegal reentry, and had state court convictions for possession of a forged instrument and disorderly conduct—was insufficient to support the conclusion that he presented a significant risk of flight or a danger to the community. *Compare Cabrera Galdamez*, 2023 WL 1777310, at *2 ("[T]he mere fact of his unlawful entry into the United States with a subsequent removal order and his single criminal case from thirteen years ago that resulted in a misdemeanor conviction may not be sufficient to substantiate that

Petitioner poses a risk of flight or danger to the community.  As such, the risk of erroneous deprivation to Petitioner's private interest under the status quo is significant.").

Rather than making arguments specific to his circumstances, like the petitioners in *Velasco Lopez* and *Cabrera Galdamez*, Petitioner has made general arguments about the sufficiency of the procedures associated with POCRs.  (*See* Dkt. 9 at ¶ 49; Dkt. 14 at 5).  But the issue before the Court in this as-applied challenge is the risk that Petitioner has been erroneously deprived of his liberty.  Petitioner has not established that the procedures at issue, including specifically his *Fraihat* custody redetermination hearing, markedly increased the risk of error in his particular case.[7]  As such, the Court finds that the second *Mathews* factor favors Respondent.

The Court next considers "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.  The importance of the government's interest in "(1) ensuring that noncitizens do not abscond and (2) ensuring they do not commit crimes . . .  is well-established[.]"  *Velasco Lopez*, 978 F.3d at 854.

---

[7]    Relatedly, "[p]arties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process."  *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) (quotation omitted); *see also Santiago Franco v. Searls*, No. 20-CV-6639-FPG, 2021 WL 9463174, at *4 (W.D.N.Y. Mar. 3, 2021) ("Having found that a procedural due process error occurred," proceeding "to examine whether such error was prejudicial to the petitioner.").  Petitioner has not identified what he alleges to be the cognizable prejudice in this case (*i.e.* how the alleged procedural deficiencies impacted the outcome of his custody reviews).

Of course, the government does not have "an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight." *Id.* So, for example, in *Cabrera Galdamez*, the court found that the third *Mathews* factor favored the petitioner because "his continued detention [was] not well-aligned with either fundamental purpose of detention: mitigating flight risk or preventing danger to the community." 2023 WL 1777310, at *7. In particular, the petitioner in that case had "strong incentives to remain in New York City" and "a network at the Bronx Defenders" to "support him in carrying out his release plan." *Id.* He also had a single criminal case from over a decade earlier. *Id.*

By contrast, Petitioner makes no argument regarding how his continued detention <u>in particular</u> does or does not align with the government's interests in mitigating flight risk and preventing danger to the community. He simply asserts that providing a bond hearing would "minimize[] the enormous impact of incarceration in cases where it serves no purpose." (Dkt. 14 at 10 (quotation omitted)). But Petitioner has pointed to nothing to support the conclusion that this is such a case. This matter is thus fundamentally unlike *Velasco Lopez* and *Cabrera Galdamez*, the two cases on which Petitioner primarily relies. Under the specific record before it, the Court finds that the third *Mathews* factor favors Respondent.

In sum, Petitioner has not demonstrated that § 1231(a)(6), as applied in his specific case, has deprived him of his right to procedural due process. The Court has based this conclusion on its assessment of the particular facts before it. The Court does not hold or suggest that on a different record, an as-applied challenge to prolonged detention under § 1231(a)(6) could not succeed.

## CONCLUSION

For the foregoing reasons, the Court denies the amended petition. (Dkt. 9). Because "as the period of confinement grows, so do the required procedural protections," *Velasco Lopez*, 978 F.3d at 853 (quotation and alteration omitted), this denial is without prejudice to Petitioner's ability to bring subsequent challenges to his detention. The Clerk of Court is directed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      March 26, 2024
            Rochester, New York